UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                                    :
NEW YORK CITY HEALTH AND                            :
HOSPITALS CORPORATION,                              :
                                                    :
                              Plaintiff,            :
                                                    :          **OPINION AND ORDER**
          - against -                               :
                                                    :            **10 Civ. 6748 (SAS)**
WELLCARE OF NEW YORK, INC.,                          :
                                                    :
                              Defendant.            :
------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On September 1, 2010, plaintiff New York City Health and Hospitals Corporation ("HHC") filed a verified amended complaint in New York State Supreme Court, New York County, asserting two state law claims against defendant WellCare of New York, Inc. ("WellCare"): (1) breach of contract, as a third-party beneficiary; and (2) unjust enrichment. On September 10, 2010, WellCare removed this Medicare payment-related action to federal court pursuant to sections 1441 and 1446 of title 28 of the United States Code. HHC now moves to remand the suit to state court. For the reasons stated below, HHC's motion to remand is denied.

1

## II.   BACKGROUND[1]

### A.   The Parties

HHC is a public benefit corporation organized under the laws of the State of New York.[2] HHC was established by the New York City Health and Hospitals Corporation Act ("NYCHHC Act") to provide the public with medical services and facilities, including hospitals.[3] The defendant, WellCare of New York, Inc., is a licensed health plan with its principal place of business in New York City. WellCare is a participant in the Medicare Advantage program, licensed under Article 44 of the New York Public Health Law.[4]

### B.   Medicare Advantage

Part C of the Medicare Program, known as Medicare Advantage, allows Medicare beneficiaries to obtain their medical benefits through private

---

[1]     The factual recitation below is taken from the Amended Complaint ("Compl."), Plaintiff's Memorandum of Law in Support of Motion to Remand ("Pl. Mem."), WellCare's Memorandum in Opposition to Plaintiff's Motion to Remand ("Opp. Mem."), and the Plaintiff's Reply to WellCare's Memorandum in Opposition to Plaintiff's Motion to Remand ("Reply Mem.").

[2]     *See* Amended Complaint ("Compl.") ¶ 4.

[3]     *See* Reply Mem. (citing NYCHHC Act §§ 2, 5(1) & (7)) at 2.

[4]     *See* Opp. Mem. at 8.

managed health care organizations ("MA Organizations").[5]  The Centers for

Medicare & Medicaid Services ("CMS"), a division of the Department of Health

and Human Services, is the federal agency that administers the Medicare

Advantage program.[6]  MA Organizations enter into contracts with CMS, under

which CMS pays each MA Organization a set amount for each Medicare

beneficiary it enrolls.[7]  In exchange, the MA Organization agrees to provide its

Medicare enrollees with, at a minimum, all the benefits the beneficiary would be

entitled to receive under the Original Medicare[8] program.[9]  The contracts also

require MA Organizations to comply with the Medicare law and CMS rules,

including those governing payments to providers.[10]

     MA Organizations enter into agreements with health care providers

---

[5]  *See* Compl. ¶ 4.

[6]  *See* Opp. Mem. at 2.

[7]  *See* Compl. ¶¶ 5-6.

[8]  Medicare is currently divided into four parts: Part A, Hospital Insurance (42 U.S.C. §§ 1395c - 1395i); Part B, Medical Insurance (42 U.S.C. §§ 1395j-1395w-5); Part C, Medicare Advantage (42 U.S.C. §§ 1395 w-21-1395w-29); and Part D, prescription drug coverage (42 U.S.C. §§ 1395w-101-1395w-154).  "Original Medicare" consists of Parts A and B and is the federal government's fee-for-service health plan.

[9]  *See* Compl. ¶ 7;

[10]  *See id.* ¶ 8.

3

("Contracted Providers") to provide services to their enrollees.  Providers that do

not have a contract with the MA Organizations ("Non-Contracted Providers") may

nevertheless provide services to MA Organizations' enrollees in an emergency

capacity.[11]  Non-Contracted Providers that provide services to enrollees of a MA

Organization are not reimbursed by CMS.  Rather, they are paid by the MA

Organization directly.[12]

### C.    HHC's Bills

HHC is a Non-Contracted Provider with respect to WellCare's

Medicare enrollees.[13]  As required by the Emergency Medical Treatment and

Active Labor Act,[14] HHC hospitals provide emergency services to WellCare's

Medicare enrollees who seek emergency services until their conditions have

stabilized.[15]  HHC then bills WellCare for the services provided, using a standard

---

[11]     *See id.* ¶¶ 9-13; 42 U.S.C. § 1395w-22(d)(1)(E) (MA Organizations must allow enrollees to obtain emergency medical services "without regard to . . . the emergency care provider's contractual relationship with the [MA] organization").

[12]     *See* Compl. ¶¶ 14-15.

[13]     *See id.* ¶ 29.

[14]     *See* 42 U.S.C. § 1395dd.

[15]     *See* Compl. ¶ 30.

billing form ("UB-04").[16]  HHC includes the amount it seeks as payment in Field 55 of the UB-04 form, which is labeled "Est. Amount Due."[17]  The amount listed in Field 55 includes the diagnosis related group ("DRG") payment amount, which is the amount that HHC would receive under Original Medicare.[18]

HHC also lists, in lines 42 through 47 of the UB-04 form, the services provided, and the related revenue codes and charges (the "Posted Charges").[19]  These Posted Charges apply to uninsured patients and some out-of-network commercial plans.  Due to the large number of low-income patients that it serves, HHC tries to keep these charges low and the Posted Charges are often lower than the DRG payment amounts.[20]

Thus, the bills that HHC submitted to WellCare listed two sums: one representing the Posted Charges, and one representing the DRG Amount.  For an unspecified number of years, WellCare paid HHC the lower of the two amounts.[21]

---

[16]     *See id.* ¶ 31.

[17]     *See id.* ¶ 32.

[18]     *See id.* ¶ 33.

[19]     *See id.* ¶ 34.

[20]     *See id.* ¶ 35.

[21]     *See id.* ¶ 36.

In May 2008, HHC demanded that WellCare pay HHC the DRG amount, not the lower Posted Charges, and that it pay HHC the difference between the DRG amounts and the Posted Charges for claims WellCare had already approved and paid.[22] Over the course of the next year the parties engaged in discussions regarding the payment dispute.[23]

In November 2009, HHC requested that CMS resolve the parties' dispute by issuing a ruling that would apply to all of the claims that WellCare had underpaid.[24] In response to the request, CMS issued a letter on May 11, 2010 to "provide clarity on the payment policy issues raised" by the parties and to assist in resolving the disagreements.[25] In that letter, CMS addressed the issue of whether "MA [O]rganizations are allowed to pay the lesser of a non-contracted provider's billed charges for hospital services or the DRG/PPS payment amount that may or may not appear on the bill."[26] The letter concluded that, "MA plans are not allowed to pay the lesser of charges unless that amount has been agreed to by both

---

[22]   *See id.* ¶ 38.

[23]   *See id.* ¶ 39.

[24]   *See id.* ¶ 49.

[25]   *See* 5/11/10 Letter from CMS to Plaintiff ("CMS Letter"), Ex. A to Pl. Mem.

[26]   *Id.*

6

parties."[27]  CMS also noted that

> under Original Medicare, itemized hospital charges for each
> revenue center are reflected [in] the UB[-]04, but Original
> Medicare never pays that amount regardless of whether the
> charges are higher or lower than the PPS amount.  The DRG
> based PPS amount is paid after being calculated through the
> Grouper and the Pricer.[28]

CMS then directed any further disputes between HHC and WellCare to its

Provider Payment Dispute Resolution Process, a non-binding and voluntary

service offered by CMS.[29]

## III.  APPLICABLE LAW

Section 1441(a) of title 28 of the United States Code allows the

removal to federal court of "any civil action brought in a State court of which the

district courts of the United States have original jurisdiction."  Section 1331 of

title 28 of the United States Code provides federal courts with "original

jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties

of the United States."

"[I]n light of the congressional intent to restrict federal court

---

[27]    *Id.*

[28]    *Id.*

[29]    *See* Compl. ¶ 43.

jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."[30]  When a party files a motion to remand challenging the removal of an action from state court, "the party asserting federal jurisdiction bears the burden of establishing jurisdiction."[31]  If the removing party cannot demonstrate federal jurisdiction by competent proof, the removal was in error and the district court must remand the case to the court in which it was filed.[32]

"As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."[33]  It is well-established that

> to determine whether the claim arises under federal law, [courts] examine the 'well-pleaded' allegations of the complaint and ignore potential defenses: 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or

---

[30]    *Lupo v. Human Affairs Int'l., Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).

[31]    *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (citing *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)).

[32]    *See, e.g., Kings Choice Neckwear, Inc. v. DHL Airways, Inc.*, No. 02 Civ. 9580, 2003 WL 22283814 (S.D.N.Y. Oct. 2, 2003).

[33]    *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

that Constitution.'[34]

Where a plaintiff asserts no federal cause of action on the face of the complaint, the state action may nevertheless be removed to federal court where "'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[35] In *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, the Supreme Court confirmed the

> commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.[36]

*Grable* resolved a circuit split that arose following the Supreme Court's opinion in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, where the Court seemingly ruled that state law claims implicating federal statutes which did not themselves explicitly provide a private right of action could not confer federal

---

[34]   *Id.* (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1914)); *Accord Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

[35]   *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).

[36]   545 U.S. 308, 312 (2005).

9

question jurisdiction.[37]  In *Grable*, the Supreme Court described the issue of whether a complaint sets forth a substantial question of federal law sufficient to warrant removal as follows:

> does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.[38]

The Second Circuit interpreted and applied *Grable's* three-part test in *Broder v. Cablevision Systems Corporation*.[39]  In that case, the court found federal question jurisdiction where the plaintiff alleged that Cablevision had breached a contractual provision subjecting "all of Cablevision's rates and any changes in those rates" to "applicable law" by violating section 543(d) of title 47 of the United States Code, which provided for uniform rates in a geographic area. Because the federal statute was incorporated by reference into the contract, was the basis for one of the plaintiff's claims, raised a substantial issue of federal law, and did not threaten to disturb the federal-state allocation of jurisdiction, the Court of Appeals found federal jurisdiction appropriate under *Grable*.

---

[37]     *See Grable*, 545 U.S. at 311; *Merrell Dow*, 478 U.S. 804 (1986).

[38]     *Grable*, 545 U.S. at 314.

[39]     418 F.3d 187 (2d Cir. 2005).

10

## IV.   DISCUSSION

WellCare argues that a fair reading of HHC's complaint reveals that the interpretation of Medicare laws and regulations is necessary to determine HHC's breach of contract claim.  Consequently, WellCare argues that the application of the *Grable* test supports federal question subject-matter jurisdiction. HHC, on the other hand, insists that WellCare cannot demonstrate the existence of a substantial, disputed federal issue.

### A.   The Complaint Raises a Federal Issue

The first prong of the *Grable* test requires that a state law claim "necessarily" raises a federal issue.[40]   HHC's breach of contract claim alleges that WellCare entered into a contract with CMS that requires WellCare "to pay health care providers according to the terms and conditions required by Medicare law and regulations."[41]  The Complaint further alleges that "Medicare law and regulations require that WellCare pay [HHC] the amount that [HHC] could collect for its services had WellCare's enrollees been enrolled in Original Medicare," and that "WellCare breached its contract with CMS by failing to pay [HHC] the DRG

---

[40]   *See Grable*, 545 U.S. at 314.

[41]   Compl. ¶¶ 46-48.

11

amounts for the services [HHC] provided to WellCare's Medicare enrollees."[42]
Therefore, in order to prevail on its breach of contract claim, HHC will have to
prove that WellCare's failure to pay the DRG amount violated Medicare law and
regulations.

In *Broder v. Cablevision Systems Corporation*, the court found that
the first prong of the *Grable* test was met under similar circumstances.  In that
case, the plaintiff filed a class action complaint against Cablevision, a cable
television provider, alleging, *inter alia*, that Cablevision breached the terms of its
uniform customer agreement.[43]  The agreement provided that "all of
[Cablevision's] rates and any changes in those rates will be subject to applicable
law."[44]  The plaintiffs alleged that Cablevision had violated that contractual
provision by failing to provide them with the uniform rates required by section
543(d) of title 47 of the United States Code, which was incorporated by
reference.[45]  The court found the first prong of *Grable* satisfied because it was
"apparent from the face of the complaint," that the breach of contract claim

---

[42]     *Id.* ¶¶ 50, 51.

[43]     *See Broder*, 418 F.3d at 192.

[44]     *Id.* (quotations omitted).

[45]     *See id.*

12

"necessarily" raised the issue of whether Cablevision violated section 543(d).[46]

Similarly, HHC's breach of contract claim necessarily raises the issue of whether WellCare violated the Medicare laws and regulations incorporated by reference into its contract with CMS. Accordingly, the first part of the *Grable* test is met.

## B.    The Federal Issue Is Substantial and Disputed

WellCare argues that the issue of its obligations under federal law with respect to HHC is both disputed and substantial. HHC, on the other hand, contends that "there can be no dispute regarding the interpretation" of the applicable Medicare regulations, because of the CMS guidance letter and the fact that WellCare has agreed to pay the Original Medicare charges going forward.[47] But WellCare clearly rejects this characterization, maintaining that its reimbursements to HHC did not violate Medicare law or regulations.[48] WellCare argues that the CMS letter did not represent a judgment on whether its past reimbursement practices were inappropriate, but rather informed the parties of what was required beginning February 25, 2010, when it issued its updated MA

---

[46]    *See id.*

[47]    Pl. Mem. at 19.

[48]    *See* Opp. Mem. at 17.

13

Payment Guide for Out of Network Payments.[49]  WellCare's modification of its

reimbursement policy represents an attempt to comport with the new policy

outlined in the February 25 Payment Guide.  Thus, there is an actual disputed

issue.[50]

      In *Broder*, the Second Circuit found that the federal issue was

substantial because the state claim implicated the "complex federal regulatory

scheme" controlling cable television providers.[51]  Here, the case implicates the

complex reimbursement schemes created by Medicare law.  The eventual outcome

of this litigation could potentially affect the hundreds of MA Organizations that

have contracted with CMS.

      HHC attempts to minimize the role that Medicare law plays in its

suit, arguing that the mere fact it is cited is insufficient to establish federal

question jurisdiction.[52]  This is not a situation where a federal issue simply lingers

in the background of a state law dominated complaint.  Rather, virtually every

---

[49]    *See id.* at 17-18.

[50]    *See Broder*, 418 F.3d at 195 (finding a federal issue actually disputed because defendant maintained that it did not violate federal law).

[51]    *Id.*

[52]    *See Grable*, 545 U.S. at 314 (stating that the existence of a federal issue in a state law claim does not serve as a "password opening federal courts to any state action embracing a point of federal law").

paragraph in the complaint makes at least passing reference to some aspect of Medicare law.  The cases on which HHC relies for the proposition that the federal issues here are not substantial are inapposite.  In *County of Nassau v. State of New York*, for instance, the court noted that the substantive references to the Help America Vote Act ("HAVA")[53] made up six paragraphs of the 202-paragraph complaint, and were only included to provide background to the New York State statute allegedly violated.[54]  In *Greenwich Financial Services Distressed Mortgage Fund 3, LLC v. Countrywide Financial Corp.*, the defendants removed a breach of contract action to federal court under *Grable* by invoking the Truth-in-Lending Act ("TILA").[55][56]  In granting the motion to remand to state court, the court found that, unlike in *Broder*, the federal statute was not incorporated by reference into the contracts, and had the defendants not raised TILA as an issue in the case, plaintiffs would not have required an interpretation of federal law in order to succeed on their claims.[57]  Obviously that is not the case here – the

---

[53]   42 U.S.C. § 15301 et seq.

[54]   *County of Nassau v. State of New York*, 724 F. Supp. 2d 295, 304 (E.D.N.Y. 2010) (finding no federal jurisdiction where a federal statute "lingers in the background, but is not the central issue").

[55]   654 F. Supp. 2d 192 (S.D.N.Y. 2009).

[56]   *See* 15 U.S.C. § 1601 et seq.

[57]   *See Greenwich*, 654 F. Supp. 2d at 202.

15

contract that HHC seeks to enforce as a third-party beneficiary incorporates Medicare law and regulations, and if WellCare had never removed the case to federal court, HHC would "still have required a favorable interpretation of federal law to succeed" on its breach of contract claim.[58]

HHC's heavy reliance on *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.* is likewise misplaced.[59] *RenCare* involved a payment dispute between an MA Organization and a Contracted Provider, wherein the Contracted Provider sued in Texas state court for breach of contract, detrimental reliance, fraud, and violations of state law. When the MA Organization removed to federal court on preemption grounds, the district court denied the plaintiff's motion to remand. On appeal, the Fifth Circuit determined that the Contracted Provider's claim did not arise under the Medicare Act within the meaning of 42 U.S.C. § 405(h), and was therefore not subject to the administrative appeal requirements set forth in 42 U.S.C. § 405(g).[60] The *RenCare* court emphasized that contracts between MA Organizations and Contracted Providers are subject to very few restrictions, and

---

[58]   *Id.*

[59]   395 F.3d 555 (5th Cir. 2004).

[60]   *See id.* at 557.

16

that the contracting parties can generally negotiate their own terms.[61] By contrast, the parties here had no contractual relationship and reimbursement is governed by a complex federal regulatory scheme.

## C.   Balance of Federal and State Judicial Responsibilities

The administrative review process established by Congress expresses the "congressionally approved balance of federal and state judicial responsibilities."[62] The Medicare Act and CMS regulations establish a mandatory administrative review process for certain claims against a MA organization.[63] The process includes several levels of review that ultimately provides for judicial review in federal district court.[64] However, the mandatory administrative review process does not apply to payment disputes between an MA Organization and a Non-Contracted Provider that does not involve government liability or enrollee liability. HHC argues that the absence of any formal administrative review process for these disputes represents a deliberate Congressional judgment that these types of claims belong in state court. But the absence of an administrative

_____

[61]   *See id.* at 559.

[62]   *Grable*, 545 U.S. at 314.

[63]   *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. §§ 422.560-422.626.

[64]   *See* 42 U.S.C. §§ 405(g),(h); 42 U.S.C. § 1395ii (making 42 U.S.C. § 405(h) applicable to the Medicare Act).

review process is not dispositive.[65]

Exercising jurisdiction over this claim would not interfere with the "normal currents of litigation."[66]  In an instructive case, a court in this circuit found that the exercise of federal jurisdiction in an action implicating federal Medicaid laws "[would] not attract 'a horde of original filings and removal cases raising other state claims with embedded federal issues.'"[67]  In that case, the Attorney General of West Virginia brought a variety of state law claims for injuries relating to overpayment for certain drugs made as part of the state's participation in the Medicaid program.[68]  The claim was removed from state court to the United States District Court for the Southern District of West Virginia by the defendant, and then transferred to the Eastern District of New York by the Judicial Panel on Multidistrict Litigation.  When the Attorney General sought to remand to state court, the court concluded that, unlike in *Merrell*, where a state cause of action that implicated a federal standard might have led to a significant rise in the caseload of the federal courts, no such danger was posed by an action to

---

[65]   *See Grable*, 545 U.S. at 317-18.

[66]   *Id.* at 318.

[67]   *West Virginia v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007) (quoting *Grable*, 545 U.S. at 318).

[68]   *See id.* at 233.

18

collect for Medicaid overpayment.[69]  Cinching the case for federal jurisdiction was "the added factor of an intricate federal regulatory scheme including detailed federal funding provisions, requiring some degree of national uniformity in interpretation."[70]  The complex federal regulatory scheme applicable to MA Organizations similarly calls for the "hope of uniformity that a federal forum offers on federal issues."[71]  And there is no reason to believe that finding jurisdiction in this case would open the floodgates and disrupt the litigation current – particularly because of the significant administrative review requirements that do exist in the Medicare field, and the availability of CMS's dispute resolution process.

## IV.    CONCLUSION

For the reasons stated above, HHC's motion to remand is denied. The Clerk of the Court is directed to close this motion [Docket No. 8].  A conference is scheduled for January 21 at 4:30 p.m.

---

[69]    *See id.*

[70]    *Id.* at 234.

[71]    *Grable*, 545 U.S. at 312.

19

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 7, 2011

20

- **Appearances** -

**For Plaintiff:**

Alan H. Kleinman
Sabita L. Krishnan
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-1012

**For Defendant:**

Cynthia E. Neidl, Esq.
Harold N. Iselin, Esq.
Greenberg Traurig, LLP
54 State Street
Albany, New York 12207
(518) 689-1400