UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                   :

NEW YORK CITY HEALTH AND HOSPITALS  :
CORPORATION,
                                   :     Case No.: 10-CV-6748 (SAS)
                                   :
                      Plaintiff,   :
       -against-                  :

WELLCARE OF NEW YORK, INC.,        :
                                   :
                     Defendant.  :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Tel:   (518) 689-1400
Fax:   (518) 689-1499
Email: neidlc@gtlaw.com
       iselinh@gtlaw.com

*Attorneys for Defendant Wellcare*
*of New York, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT BACKGROUND ............................................................................................2

ARGUMENT .......................................................................................................................4

   I.  STANDARD OF REVIEW ....................................................................................4

  II.  HHC'S CLAIMS ARE PREEMPTED AND SHOULD BE DISMISSED ........................5

 III.  HHC'S STATE LAW CLAIMS CONSTITUTE AN IMPERMISSIBLE
      END RUN AROUND THE MMA ...........................................................................9

 IV.  HHC'S CLAIM FOR BREACH OF CONTRACT FAILS AS A
      MATTER OF LAW ..............................................................................................11

        A.  The CMS Contract Does Not Require WellCare to Pay HHC in the
            Manner Alleged by HHC .......................................................................12

        B.  HHC Is Not an Intended Third-Party Beneficiary of the CMS
            Contract ..................................................................................................15

  V.  HHC's UNJUST ENRICHMENT CLAIM ALSO FAILS AS A MATTER
      OF LAW ..............................................................................................................18

CONCLUSION ...................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Ashcroft v. Iqbal,*
    --U.S.--, 129 S.Ct. 1937 (2009) ........................................................................4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................4

*Broder v. Cablevision Systems, Corp.,*
    418 F.3d 187 (2005) .............................................................................9, 10, 15

*Buckman Co. v. Plaintiffs' Legal Committee,*
    531 U.S. 341 (2001)..........................................................................................8

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)............................................................................5

*Clark -Fitzpatrick, Inc. v. Long Island Rail Road Co.,*
    70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) ...............................................18, 19

*County of Suffolk v. Long Island Lighting Co.,*
    728 F.2d 52 (2d Cir. 1984)............................................................................17

*DFP Manufacturing Corp. v. Northrup Grumann Corp.,*
    No. 97-CV-4494, 1999 WL 33458384 (E.D.N.Y. Mar. 23, 1999)....................17

*Goldman v. Metropolitan Life Insurance Co.,*
    5 N.Y.3d 561, 807 N.Y.S.2d 583 (2005) .......................................................18

*Grochowski v. Phoenix Construction,*
    318 F.3d 80 (2d Cir. 2003)..........................................................................9, 10

*Gunther v. Capital One, N.A.,*
    703 F. Supp. 2d 264 (E.D.N.Y. 2010) ..............................................................9

*In re Motel 6 Securities Litigation,*
    Nos. 93 Civ. 2183, 93 Civ. 2866, 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997).................19

*Ingersoll-Rand Co. v. McClendon,*
    498 U.S. 133 (1990)........................................................................................5

*Kagan v. K-Tel Entertainment Inc.,*
    172 A.D.2d 375, 568 N.Y.S.2d 756 (1st Dep't 1991) ...............................19, 20

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000)..................................................................................19

*Kirell v. Vytra Health Plans Long Island, Inc.,*
    29 A.D.3d 638, 815 N.Y.S.2d 185 (2d Dep't 2006) ..........................................19

*Madeira v. Affordable Housing Foundation, Inc.,*
    469 F.3d 219 (2d Cir. 2006)..................................................................................16

*New York SMSA Ltd., v. Town of Clarkson,*
    612 F.3d 97 (2d Cir. 2010)......................................................................................7

*Paramount Film Distributing Corp. v. New York,*
    30 N.Y.2d 415 (1972), *cert. denied* 414 U.S. 829 (1973) ...............................19

*Pekler v. Health Insurance Plan of Greater New York,*
    67 A.D.3d 758, 888 N.Y.S.2d 196 (2d Dep't 2009) ..........................................19

*Premium Mortgage Corp. v. Equifax, Inc.,*
    583 F.3d 103 (2d Cir. 2009)..................................................................................17

*Shortcuts Editorial Services, Inc. v. Kaleidoscope Sports & Entertainment, L.L.C.,*
    183 Misc. 2d 334, 706 N.Y.S.2d 572 (1st Dep't 2000) ....................................20

*Snyder Plumbing & Heating v. Purcell,*
    9 A.D.2d 505, 195 N.Y.S.2d 780 (1st Dep't 1960) ..........................................16

*State of California Public Employees' Retirement System v. Shearman & Sterling,*
    95 N.Y.2d 427, 718 N.Y.S.2d 256 (2000) .........................................................16

*Travelers Indemnity Co. of Connecticut. v. Losco Group, Inc.,*
    150 F. Supp. 2d 556 (S.D.N.Y. 2001)..................................................................19

*Uhm v. Human, Inc.,*
    620 F.3d (9th Cir. 2010) ................................................................................5, 6, 7, 9

## STATUTES AND RULES

29 U.S.C. § 1144(a) .......................................................................................................5

42 U.S.C. § 1395w-22(a)(2) .......................................................................................15

42 U.S.C. § 1395w-26(b)(3) .........................................................................................5

42 U.S.C. § 1395w-26(b)(3)(A) (2000) ......................................................................6

Federal Rule of Civil Procedure 12(b)(6) ...........................................................1, 4, 21

42 C.F.R. § 412.105(g) ................................................................................13

42 C.F.R. § 413.76 ......................................................................................13

42 C.F.R. § 422.100 ...............................................................................14, 15

42 C.F.R. § 422.100(b)(1) ..........................................................................14

42 C.F.R. § 422.100(b)(2) ..........................................................................15

42 C.F.R. § 422.214 ....................................................................................13

42 C.F.R. § 422.214(b) ...............................................................................13

42 C.F.R. § 422.402 ......................................................................................5

42 C.F.R. § 422.504(a)(6) ......................................................................12, 16

42 C.F.R. § 422.506 ..............................................................................10, 17

42 C.F.R. § 422.510 ..............................................................................10, 17

42 C.F.R. § 422.520 ..............................................................................10, 17

42 C.F.R. § 422.570 ..............................................................................10, 17

## OTHER AUTHORITIES

*Department of Health & Human Services, Centers for Medicare & Medicaid Services, Medicare Program; Establishment of the Medicare Advantage Program; Final Rule,*
    70 Fed. Reg. 4588, 4664 (Jan. 28, 2005) ...........................................................6

*Medicare Prescription Drug, Improvement, and Modernization Act of 2003, H.R. Conf. Rep.*
    108-391 (Nov. 21, 2003), reprinted in 2003 U.S.C.C.A.N. 1808 .......................6

*Medicare Program: Proposed Changes to the Medicare Advantage Program,*
    75 Fed. Reg. 71190 (Nov. 22, 2010).............................................................13, 14

*Restatement (Second) of Contracts § 313(2)* ............................................................16

*Special Rules for Services Furnished by Noncontract Providers § 422.214,*
    65 Fed. Reg. 40170, (June 29, 2000) ........................................................13, 15

Defendant WellCare of New York, Inc. ("WellCare") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff New York City Health and Hospitals Corporation's ("HHC") Verified Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

HHC brought this action to enforce its unsupported interpretation of federal law under which there is no private right of action. HHC alleges that WellCare, a Medicare Advantage ("MA") managed care organization, underpaid HHC for services rendered to WellCare's MA plan enrollees. According to HHC, WellCare failed to comply with certain federal statutes and regulations that dictate how much WellCare should have paid HHC. However, even a cursory review of the federal law cited by HHC demonstrates that HHC's allegations — and this lawsuit — are without merit.

Before bringing suit, HHC sought relief directly from the Centers for Medicare & Medicaid Services ("CMS"), the federal agency responsible for implementation of the MA program and oversight of MA organizations such as WellCare. Tellingly, CMS did not find that WellCare's payment methodology was inconsistent with federal law. CMS merely clarified WellCare's payment obligations pursuant to CMS's recently issued guidance. CMS also referred the parties to a quick, efficient and inexpensive dispute resolution process developed by CMS to resolve underpayment claims exactly like those asserted by HHC.

HHC rejected that alternative, however, and instead initiated this litigation. In the Complaint, HHC asserts two preempted and non-cognizable claims. First, HHC asserts a third-party beneficiary contract claim, based on WellCare's purported violation of federal law. Second, HHC asserts an unjust enrichment claim, seeking the difference between the amounts received from WellCare and the "reasonable value of its services."

HHC's claims should be dismissed.  First, it is undisputed that existing federal standards govern how an MA organization must reimburse a Non-Contract Provider.  HHC's state law causes of action seeking reimbursement are therefore expressly and impliedly preempted by federal law.  Second, HHC's claims are based on federal laws for which there is no private right of action, and therefore should be dismissed as an impermissible attempt to circumvent the preclusion of private lawsuits for violation of these laws.

Third, the Complaint fails to state a claim upon which relief may be granted.  HHC's contract claim fails because WellCare violated no statute or regulation, and because HHC is not an intended third-party beneficiary of CMS's contract with WellCare.  Similarly, HHC's unjust enrichment claim fails because principles of equity and good conscience weigh heavily against requiring WellCare to pay HHC any more than the millions of dollars it timely paid for HHC's services.  The Court should dismiss the Complaint in its entirety.

## RELEVANT BACKGROUND

WellCare is an MA organization with a contract with CMS ("CMS Contract") to provide services to Medicare enrollees.  (Compl. ¶ 28; *see* CMS Contract, Declaration of Cynthia Neidl, dated January 27, 2011, ("Neidl Decl.") Ex. B.)  Pursuant to the CMS Contract, WellCare has agreed to operate one or more MA coordinated care plans.  (Neidl Decl. Ex. B, Art. II.)

HHC is a public benefit corporation organized and existing under the laws of the State of New York.  (Compl. ¶ 2.)  In the Complaint, HHC alleges that certain unnamed hospitals ("HHC Hospitals") rendered emergency services to WellCare's MA enrollees.  (*Id.* ¶ 30.)  Neither HHC nor any of the HHC Hospitals have a contract with WellCare, and thus under applicable law they are "Non-Contract Providers."  (*Id.* ¶¶ 11, 29.)  WellCare's obligation to reimburse the HHC Hospitals for emergency services is governed exclusively by Medicare statutes, regulations, guidance and policy concerning MA plan payments to Non-Contract Providers.

The HHC Hospitals bill WellCare for emergency and stabilization services rendered to WellCare enrollees on form UB-04. (*Id.* ¶ 31.) In fields 42 through 47, HHC lists the services it provided, as well as related revenue codes and charges ("Billed Charges"). (*Id.* ¶ 34.) In field 55 of the form, labeled "Est. Amount Due," HHC allegedly includes its calculation of the diagnosis related group ("DRG") payment amount. (*Id.* ¶¶ 32-33.) According to HHC, the DRG amount is the amount it would have received under Original Medicare. (*Id.* ¶ 33.)

Until recently, WellCare reimbursed the HHC Hospitals for their services based on the lesser of their Billed Charges or the DRG amount. (Compl. ¶ 36.) "For many years," the HHC Hospitals accepted without complaint millions of dollars in payments made by WellCare. (*Id.*) However, in May 2008, HHC demanded that WellCare start paying HHC the DRG amount for services rendered, as opposed to its Billed Charges. (*Id.* ¶ 38.) In addition, HHC demanded that WellCare pay HHC the difference between the amounts previously paid by WellCare for emergency services and the DRG amounts for all prior claims. (*Id.*) WellCare declined to pay more than what HHC listed in its invoices as its charges. (*Id.* ¶ 39.)

In or about November 2009, HHC requested that CMS resolve the parties' dispute. (Compl. ¶ 40.) On February 25, 2010, CMS issued new, revised guidance addressing the manner in which MA Plans must reimburse Non-Contract Providers. (*Id.* ¶ 42.) Then in May 2010, CMS sent HHC a letter that addressed the parties' various issues. (*Id.*; *see* Dkt. No. 15, Declaration of Sabita Krishnan ("Krishnan Decl.") Ex. A.) CMS did not state that WellCare had incorrectly paid HHC, nor did it order WellCare to make any additional payments to HHC. (Compl. ¶ 43; Krishnan Decl. Ex. A.) Instead, the letter reiterated the requirements of CMS's February 25, 2010 guidance on the payment issue, but did not indicate that such requirements should be applied retroactively to claims submitted prior to February 25, 2010. (Compl. ¶ 42;

Krishnan Decl., Ex. A.)   CMS directed any further disputes between the parties to CMS's Provider Payment Dispute Resolution Process.  (Compl. ¶ 43; Krishnan Decl. Ex. A.)

On August 12, 2010, HHC filed a verified complaint in the New York State Supreme Court, New York County.  (Dkt. No. 1, Notice of Removal, Ex. A.)  On September 1, 2010, HHC filed an amended complaint, which includes two claims against WellCare.  (*Id.*, Ex. B.)  HHC asserts two claims against WellCare:  (1) a third-party beneficiary breach of contract claim based on the CMS Contract; and (2) an unjust enrichment claim.  (Compl. ¶¶ 46-58.)

On September 10, 2010, WellCare removed this action from state court to this Court.  (Dkt. No. 1.)  On October 7, 2010, HHC moved to remand this case back to state court.  (Dkt. No. 8.)  By Opinion and Order filed January 7, 2011, this Court denied HHC's motion to remand.  (Dkt. No. 16.)  WellCare now moves this Court for an order dismissing this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.   STANDARD OF REVIEW

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, —US—, 129 S.Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

In deciding a motion to dismiss, the court may consider documents attached to the complaint or incorporated in it by reference, matters of which judicial notice may be taken, or

documents that the plaintiff relied upon in bringing suit and are either in his possession or of which he had knowledge. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, the Court may consider the CMS Contract, on which HHC relies for its third-party beneficiary contract claim. (*See* Compl. ¶¶ 28, 46-53.)

## II.   HHC'S CLAIMS ARE PREEMPTED AND SHOULD BE DISMISSED

HHC's state law claims are expressly and impliedly preempted by federal law.  The broad preemption provision in the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("MMA") provides as follows:

> The standards established under this part shall supersede any State law or regulation (other than State licensing law or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3); *accord* 42 C.F.R. § 422.402.

Congress drafted this provision to be broadly applicable and encompassing.  The term "with respect to" is substantially similar to the term "relates to" as used in the ERISA preemption statute, which has been interpreted very broadly.  *See* 29 U.S.C. § 1144(a); *see, e.g., Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (noting that the ERISA preemption provision is "conspicuous for its breadth" (quotations and citation omitted)).  Moreover, there is no savings clause within the MMA, other than the carve out contained within the preemption provision itself, which further demonstrates Congress's intent to ensure the expansive scope of federal preemption with respect to MA plans.  *See Uhm v. Humana Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) (in holding that MMA preempts certain state common law claims, noting that the MMA lacks any "indication that Congress intended to save any common law claims").

Legislative history demonstrates Congress's intent in 2003 to expand significantly the scope of federal preemption with respect to MA plans.  Prior to 2003, the Medicare preemption provision stated that federal standards would supersede state law and regulations with respect to

MA plans only to the extent such law or regulation was "inconsistent" with such standards, and it identified certain standards that were specifically superseded.  42 U.S.C. § 1395w-26(b)(3)(A) (2000); *see Uhm*, 620 F.3d at 1149 n.22 (reciting text of earlier statute).  With the MMA, Congress amended the preemption clause to expand its effects beyond those state standards that were merely inconsistent with federal standards.

The House Conference Report accompanying the MMA indicates that the amendment was intended to "clarif[y] that the MA program is a federal program operated under Federal rules.  State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." *Medicare Prescription Drug, Improvement, and Modernization Act of 2003*, H.R. Conf. Rep. 108-391, at 556-557 (Nov. 21, 2003), *reprinted in* 2003 U.S.C.C.A.N. 1808.  CMS's comments, published in the Federal Register, indicate that the purpose of the 2003 amendment was "to broaden the scope of Federal preemption with the intention of ensuring that the MA program as a Federal program will operate under Federal rules." *See Dep't of Health & Human Services, Centers for Medicare & Medicaid Services, Medicare Program; Establishment of the Medicare Advantage Program; Final Rule*, 70 Fed. Reg. 4588, 4664 (Jan. 28, 2005).

In *Uhm v. Humana Inc.*, the Ninth Circuit addressed the issue of whether state common law causes of action, in addition to state statutes and regulations, may be preempted under the MMA.  620 F.3d at 1153-56.  After careful analysis of the language of the MMA and its legislative history, the court concluded that certain state law claims can be preempted.  The court found it particularly persuasive that CMS's latest position on the issue was that the term "any State law or regulation" includes state standards established through case law. *Id.* at 1156 (citing 70 Fed. Reg. at 4665).  The court concluded that Congress intended to expand the preemption provision beyond those state law claims that were inconsistent with the federal standards. *Id.* at

1150. However, the court found plaintiffs' state law claims were in fact inconsistent with federal standards, and so the court did not need to reach the issue of the degree to which preemption had been expanded with the 2003 amendment.

While the *Uhm* case involved the claims of Medicare enrollees, the court's decision did not turn on that fact. Indeed, the Ninth Circuit's preemption analysis is equally applicable where, as here, the state common law claims asserted would impose standards on an MA plan that would be in addition to existing federal standards. And while the Ninth Circuit focused on the inconsistencies between the two standards, the express preemption provision does not require any inconsistency. Here, HHC concedes, as it must, that it has no contract with WellCare and therefore federal standards govern the manner in which WellCare must reimburse the HHC Hospitals. Because these federal standards exist, state law is expressly preempted under the plain meaning of the MMA preemption provision.

In addition, HHC's claims are impliedly preempted by the MMA. Preemption may be implied where the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. *See New York SMSA Ltd. v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010). Here, as the Complaint makes clear, Congress intended federal law and policies to govern the relationship between MA plans and Non-Contract Providers with respect to payments for services rendered to MA enrollees. Congress and CMS have articulated standards applicable to MA plans under these circumstances, and Congress empowered CMS to police an MA plan's compliance with these standards. Moreover, the relationship between an MA plan and Non-Contract Provider is simply not an area of traditional state regulation, such as health and safety.

HHC's state law claims also conflict with federal law. HHC's unjust enrichment claim is based on allegations that HHC should receive the "reasonable value" of the services it provides

to Medicare enrollees from MA plans, regardless of the amount WellCare should have paid under federal law. (Compl. ¶¶ 54-58.) This claim involves state standards of payment which are clearly inconsistent with federal standards. Permitting such a claim to go forward would pose an obstacle to the achievement of the federal goal of uniformity and ensuring that the MA program and MA plans operate under federal rules. Indeed, such quasi-contract claims could subject an MA plan to fifty different payment rates, in addition to the federal standards.

HHC's contract claim is also inconsistent with federal law because it conflicts with CMS's regulatory authority. As the Supreme Court has recognized, "a relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 347 (2001) (holding state law fraud-on-FDA claims were impliedly preempted by the Food, Drug, and Cosmetic Act, as the FDA had ample authority to punish and deter the wrongdoing alleged in the complaint). State law claims based on CMS's contracts with MA Plans will inevitably conflict with CMS's oversight and regulatory responsibilities. Indeed, HHC takes issue with — and seeks to have this Court review — CMS's determination with respect to HHC's claims.

HHC's third-party beneficiary claim is also inconsistent with federal standards because the substantive requirements for such a claim, as well as the permissible defenses to it, would vary depending on which state's law was applicable. For example, any appeals and grievances under the MMA must be filed promptly, whereas claims under state law could be asserted years after the allegedly wrongful conduct. And like a quasi-contractual claim, a third-party contract claim would be subject to the interpretation of each jurisdiction hearing the claim, and thus could subject an MA Plan to fifty different payment rates across the nation.

In addition, Congress has established a mandatory administrative appeals process for many claims that arise under the MMA.  Permitting third-party beneficiary claims to go forward would open the door to an end-run around this administrative process to anyone that can claim third-party beneficiary status under CMS's contracts.    While HHC has alleged that its underpayment claims are not subject to the MA administrative appeal process (Compl. ¶¶ 20-27), this allegation is irrelevant.  *See, e.g., Uhm,* 620 F.3d at 1145, 1153 (holding that fraud claims were not subject to administrative review process, but were preempted by MMA).  The question of whether federal law preempts state common law causes of action turns on whether federal standards exist, not on whether the plaintiff has an administrative remedy.  Regardless of whether HHC's claims are subject to that process, it is reasonable to assume that  both Congress and CMS have provided all the remedies they found appropriate.  Moreover, permitting a state law claim that seeks to enforce federal obligations will undermine Congress's attempt to articulate uniform payment standards and CMS's attempt to provide an administrative remedy if there are disagreements.  HHC's contract claim should be dismissed as preempted.

## III.  HHC'S STATE LAW CLAIMS CONSTITUTE AN IMPERMISSIBLE END RUN AROUND CONGRESS'S DECISION NOT TO INCLUDE A PRIVATE RIGHT OF ACTION UNDER THE MMA

HHC's state common law claims are an indirect attempt to enforce federal law under which there is no private right of action.  Under well-settled law, HHC's claims should be dismissed. *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005); *Grochowski v. Phoenix Construction*, 318 F.3d 80, 85 (2d Cir. 2003); *Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 271 (E.D.N.Y. 2010).

In *Grochowski v. Phoenix Construction*, plaintiffs asserted third-party beneficiary contract and *quasi*-contract claims against a defendant based on an alleged violation of federal law.  318 F.3d at 85.  After finding that the federal statute at issue did not permit a private right

of action, the Second Circuit held that plaintiffs' state-law claims were an "impermissible 'end run' around" the federal statute, and thus failed as a matter of law. *Id.* at 86. The court was concerned that plaintiffs' claim would undermine Congress's intent that the federal law at issue be enforced by a regulatory agency and not private citizens. *Id.*

Similarly, in *Broder v. Cablevision Systems Corp.*, the plaintiff brought state common law claims to enforce federal law. 418 F.3d at 187. The Second Circuit affirmed dismissal of the contract claim, holding that the district court had correctly refused to find a viable state common law contract claim based on the violation of federal law for which there was no private right of action. *Id.* In so holding, the Second Circuit noted that the *Grochowski* decision "stands at least for the proposition that a federal court should not strain to find in a contract a state-law right of action for violation of federal law under which no private right of action exists." *Id.* at 198. The court also concluded that under New York law, an unjust enrichment claim cannot be stated based on the violation of a statute for which there is no private right of action. *Id.* at 203. Thus, the court affirmed the dismissal of that claim as well. *Id.*

Here, the Complaint expressly states that this action is one to enforce federal law. (Compl. ¶¶ 1, 49-51.) Moreover, HHC has conceded that there is no private right of action under the federal laws it seeks to enforce. (*See* Dkt. No. 9, HHC's Br. in Support of Remand at 2 (asserting that there is no private right of action under Medicare law or regulations for its claims); Dkt. No. 14, HHC's Reply Br. in Support of Remand at 5 (asserting that federal regulations do not allow HHC to take any action in a federal forum).) Since the federal laws at issue do not permit private enforcement, this Court should dismiss HHC's claims.

It is important to note that HHC was not without a remedy for its claims. While HHC's claims were not subject to the administrative appeal process for "organizational determinations," (Compl. ¶¶ 20-26), other options were available. First, HHC could have filed a complaint with

CMS with respect to this issue years ago.  CMS has expansive regulatory authority over MA organizations.  *See, e.g.,* 42 C.F.R. §§ 422.506 (contract non-renewal authority), 422.510 (contract termination authority), 422.520 (directing payment of sums owed to providers), 422.570 (intermediate sanctions).  Had CMS found any merit to HHC's claim, it could have sanctioned WellCare and directed it to pay HHC whatever additional amounts it deemed proper.  Indeed, when HHC finally went to CMS with the issue, CMS promptly issued revised guidance that clarifies an MA plan's payment obligations with respect to Non-Contract Providers where the providers' invoices include both the DRG Amount and Billed Charges.  (Compl. ¶¶ 40, 42.)  As a result, WellCare changed its manner of reimbursing such providers, including the HHC Hospitals, consistent with this guidance.  CMS also now requires MA plans to permit Non-Contract Providers to file a first-level dispute regarding payment, which is then reviewable under CMS's provider dispute resolution program.  (Neidl Decl. Ex. C at 22.)

CMS also directed the parties to its dispute resolution program, (*Id.* ¶ 27), and WellCare agreed to participate in that process.  Yet, despite the prospect of a quick, efficient and inexpensive resolution of HHC's claims, HHC rejected that alternative.  Finally, HHC had the ability to protect its rights in the first instance by contracting with WellCare with respect to the rates it receives.  Having refused to do so, HHC should not be heard to complain that it is without a state law cause of action.

## IV.    HHC'S CLAIM FOR BREACH OF CONTRACT FAILS AS A MATTER OF LAW

HHC has no contract with WellCare, and is not a party to CMS's Contract with WellCare.  Under its first claim, HHC seeks to enforce the CMS Contract as a third-party beneficiary.  This claim is based on two demonstrably incorrect premises:  first, that the CMS Contract incorporates by reference all Medicare statutes and regulations governing payment to providers; and second, that Medicare statutes and regulations mandate that WellCare pay HHC's

claims in the manner urged by HHC. Moreover, even if WellCare did breach its contract with CMS, HHC has not alleged, nor can it allege, that HHC is a specifically intended beneficiary of the parties' contract, or that the parties intended to give HHC standing to enforce its provisions. These pleading deficiencies are fatal to HHC's contract claim.

### A.   The CMS Contract Does Not Require WellCare to Pay HHC in the Manner Alleged by HHC

Regardless of whether HHC is an intended third-party beneficiary, the statutes and regulations cited by HHC fail to support its legal assertion that WellCare breached its agreement with CMS. While the applicable rules require Non-Contract Providers to accept the Original Medicare amount as full payment for the protection of beneficiaries, there is no affirmative obligation in either the CMS Contract or the regulations referenced therein to pay Non-Contract Providers the DRG amount.

The CMS Contract expressly requires WellCare to comply with certain specific, identified statutes and regulations. Contrary to HHC's allegations, the CMS Contract does not require WellCare to comply with all Medicare law and CMS rules, including CMS rules governing payments to providers.[1] (*Compare* Compl. ¶ 8 (selectively quoting from 42 C.F.R. § 422.504(a)(6)), *with* Neidl Decl. Ex. B.) Rather, with respect to providers, CMS's contract provides in relevant part as follows:

D. PROVIDER PROTECTIONS

1.    The MA Organization agrees to comply with all applicable provider requirements in 42 CFR Part 422 Subpart E, including provider certification requirements, anti-discrimination requirements, provider participation and consultation requirements, the prohibition on interference with provider advice,

---

[1] This is not to say that WellCare may disregard those Medicare statutes and regulations that are not incorporated into the CMS Contract. CMS has ample authority to address any violations of Medicare law, regulations and policy separate and apart from its contract with WellCare. However, only those statutes and regulations that are expressly incorporated into the agreement can form the basis for a cognizable breach of contract claim.

> limits on provider indemnification, rules governing payments to providers, and
> limits on physician incentive plans. [422.504(a)(6)]

(Neidl Decl. Ex. B at 4 (emphasis added).)  Thus, the only regulations that can form the basis for

HHC's breach of contract claim are found in Subpart E of 42 C.F.R. Part 422.

The only Subpart E regulation cited in the Complaint is 42 C.F.R. § 422.214(b), which is

unambiguous and does not impose any obligation on MA plans.  This regulation provides that

Non-Contract hospital Providers "must accept, as payment in full, the amounts (less any

payments under § 412.105(g) and § 413.76 of this chapter) that it could collect if the beneficiary

were enrolled in original Medicare." 42 C.F.R. § 422.214(b).  (*See* Compl. ¶ 17; *see also* Neidl

Decl. Ex. D.)  While this provision limits the amount a Non-Contract hospital Provider must

accept, it is not an affirmative obligation on what an MA plan must pay.  In answering comments

regarding the proposed promulgation of Section 422.214, CMS stated clearly that neither this nor

a similar provision "requires an M+C organization to pay a provider more than the amount of the

provider's bill or even impose obligations on M+C organizations at all."  *Special Rules for*

*Services Furnished by Noncontract Providers (§ 422.214)*, 65 Fed. Reg. 40170, 40243 (June 29,

2000) (*see* Neidl Decl. Ex. E.)

Further undermining HHC's interpretation of § 422.214(b) is the fact that CMS has

issued instructional materials that provide that an MA Plan may "pay the lesser of the Original

Medicare amount or the billed amount." (Compl. ¶ 42; *see* Neidl Decl. Exs. F and G.)  If Section

422.214 required MA plans to pay the DRG amount, then CMS's guidance — which permits an

MA Plan to pay a lesser amount under certain circumstances — would be contrary to those

regulations.  It is also significant that CMS is currently in the process of amending § 422.214(b)

to incorporate the policy set forth in CMS's February 25 guidance.  *See Medicare Program:*

*Proposed Changes to the Medicare Advantage Program*, 75 Fed. Reg 71190, 71223-24 (Nov.

22, 2010 (*see* Neidl Decl. Ex. H.)  Currently, however, the regulation does nothing more than cap the amount a Non-Contract Provider must accept as payment in full.

In arguing that this case should be remanded to state court, HHC appeared to base its contract claim on requirements imposed under CMS's instructional materials, as interpreted by HHC.  (*See, e.g.,* Dkt. No. 14, HHC's Reply Br. in Support of Remand at 2, 4 (arguing that, pursuant to CMS's manual, WellCare was required to pay HHC the DRG amount if that was the amount of HHC's "bill," and therefore "this dispute comes down to the interpretation [of] HHC's bill").)  However, neither CMS's manual nor its MA payment guide is incorporated by reference into CMS's contract with WellCare.  Therefore, WellCare's purported failure to comply with these documents does not establish HHC's breach of contract claim.

In the Complaint, HHC also cites 42 C.F.R. § 422.100 in support of its third-party beneficiary contract claim.  (Compl. ¶ 16; *see* Dkt. No. 14, HHC Reply Br. in Support of Remand at 3 (relying exclusively on this provision when articulating the basis for its contract claim).)  This provision, however, falls under Subpart C ("Benefits and Beneficiary Protections") of Part 422, not Subpart E, and therefore is not incorporated into the CMS Contract.  Because 42 C.F.R. § 422.100 is not a part of the CMS Contract, WellCare's purported violation of this provision cannot support HHC's contract claim.

Moreover, even if Section 422.100 were incorporated into the CMS Contract, this provision does not obligate WellCare to pay HHC the DRG amount.  Under this provision, an MA Plan's payment obligations differ depending on whether the services rendered by the Non-Contract Provider are ambulance, emergency, post-stabilization care, or renal dialysis services (collectively, "Emergency Services"), or are nonemergency services arranged or furnished by the MA Plan ("Furnished Services").  For Emergency Services rendered by Non-Contract Providers, Medicare law requires MA Plans to make "timely and reasonable payment to or on behalf of the

plan enrollee" to Non-Contract Providers.  42 C.F.R. § 422.100(b)(1) (attached as Ex. I to Neidl

Decl.)  For Furnished Services, the MA Plan must provide "payment in an amount the provider

would have received under original Medicare (including balance billing under Medicare Part A

and B)."  42 U.S.C. § 1395w-22(a)(2); 42 C.F.R. § 422.100(b)(2); *see also Special Rules for*

*Services Furnished by Noncontract Providers (§ 422.214)*, 65 Fed. Reg. 40170, 40242-43 (Jun.

29, 2000) (stating that this minimum payment provision applies only where the M+C

organization has <u>arranged for</u> the nonemergency services in question to be provided by a Non-

Contract Provider) (Neidl Decl. Ex. E).  Here, there is no dispute that the services rendered by

HHC were Emergency Services within the meaning of Section 422.100, (Compl. ¶ 30), and

therefore WellCare was required only to make "timely and reasonable" payment to HHC.

That HHC's contract claim lacks merit is demonstrated by the fact that CMS is aware of

HHC's underpayment claims and yet did not order WellCare to pay HHC any additional

amounts.  (Compl. ¶ 43.)  If CMS believed that WellCare violated federal statutes and

regulations, certainly CMS would have taken some action.  Moreover, after the issue was raised

by the parties, CMS clarified its guidance with respect to payments by MA organizations to Non-

Contract providers.  Thus, CMS recognized the dispute as one caused by the ambiguities of its

guidance and policies, not the result of WellCare's disregard for federal laws.

HHC's allegations of breach fail as a matter of law.  And because there is no private right

of action under any of the statutes or regulations relied on by HHC, this Court should not "strain"

to find a breach of contract here.  *See Broder*, 418 F.2d at 198.

### B.    HHC Is Not an Intended Third-Party Beneficiary of the CMS Contract

In order to state a contract claim as a third-party beneficiary, a party must allege the

following three elements:

(1)    the existence of a valid and binding contract between other parties;

(2)     that the contract was intended for his benefit; and

(3)     that the benefit to him is sufficiently immediate, rather than incidental, to
        indicate the assumption by the contracting parties of a duty to compensate
        him if the benefit is lost.

*Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (internal quotation

marks and citations omitted); *State of Cal. Pub. Emps' Ret. Sys. v. Shearman & Sterling*, 95

N.Y.2d 427, 434-35, 718 N.Y.S.2d 256, 259 (2000).

        While there is a valid and binding contract between CMS and WellCare, HHC cannot

establish the second two requirements of its claim.  "It is generally the accepted rule that the

intent to confer a direct benefit on a third party must clearly appear in order to enable such a

party, not named in the contract, to recover thereunder." *Snyder Plumbing & Heating v. Purcell*,

9 A.D.2d 505, 508, 195 N.Y.S.2d 780, 783 (1st Dep't 1960).  Here, there are no facts from which

one can reasonably infer that CMS intended to confer a direct benefit on HHC in contracting

with WellCare.

        The Complaint is devoid of facts that suggest the CMS Contract was intended for the

benefit of HHC or any other provider.  Indeed, HHC acknowledges, as it must, that applicable

regulations require CMS to include in its contracts with MA organizations certain provisions

relating to beneficiary and provider protections. (Compl. ¶ 8 (citing 42 C.F.R. § 422.504(a)(6)).)

These provisions were intended to benefit the Medicare program, not providers.

        It is well settled that third-party beneficiary status is not conferred simply because an

entity is one of many members of the general public who would reap the benefit of a government

contract.  *See* Restatement (Second) of Contracts § 313(2) (reciting rule that government

contractors are not generally liable to individual members of the public for damages resulting

from the contractor's failure to perform under government contract); *see also County of Suffolk*

*v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) (holding ratepayers who would benefit under contract to build nuclear power plant were not third party beneficiaries because the "primary intent [of the contract] was to benefit . . . shareholders"); *cf. DFP Mfg. Corp. v. Northrup Grumann Corp.*, No. 97-CV-4494, 1999 WL 33458384, at *8 (E.D.N.Y. Mar. 23, 1999) (declining to dismiss third party beneficiary claim because the plaintiff "was the only third party implicated in" the underlying contract). HHC's allegations are inadequate to establish that HHC is anything other than a member of a nationwide class of providers whose incidental realization of benefits is secondary to the benefit flowing to the Medicare program.

HHC also cannot establish the third element of third-party beneficiary standing. A non-party to a contract "lacks standing to enforce the agreement in the absence of terms that clearly evidence an intent to permit enforcement by the third party in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (internal citations omitted). To hold otherwise would run counter to settled case law, result in "countless unforeseeable lawsuits," "impair the notion of privity of contract," and improperly usurp the government's role in enforcing its own contracts. *County of Suffolk*, 728 F.2d at 63.

The terms of the CMS Contract negate any inference that CMS and WellCare intended to permit providers to enforce the parties' agreement. The CMS Contract contains no provisions relating to enforcement, other than non-renewal and termination by CMS. Indeed, applicable regulations give CMS the ability to non-renew or terminate its contract, to order the plan to pay providers, and to sanction an MA organization that has violated applicable standards. *See* 42 C.F.R. §§ 422.506, 422.510, 422.520, 422.570. If CMS takes such action, the aggrieved MA organization may request reconsideration and/or appeal an adverse determination. Accordingly, permitting private enforcement of CMS's contracts would be contrary to the remedies

contemplated by Congress and CMS, as well the rights afforded MA organizations where enforcement is permitted.

If HHC's assertions are sufficient to support third-party beneficiary standing here, then every contract entered into by CMS with an MA plan is enforceable by every provider that renders services to MA plan enrollees. The statutory framework of Medicare, including both a broad preemption provision and a mandatory administrative appeal process, demonstrate that Congress did not intend to permit providers to enforce CMS's contracts with MA organizations under state law. Moreover, as HHC alleged, CMS has established a dispute resolution process to obtain review in a situation such as this. Had CMS contemplated that providers could simply sue to enforce CMS's contracts with MA organizations, such a program would be superfluous. Indeed, in response to HHC's complaints of underpayments by WellCare, CMS directed HHC to its dispute resolution process, not to the courts. (Compl. ¶ 43.) HHC has failed to state a third-party beneficiary claim for breach of contract, and the claim should therefore be dismissed.

## V.    HHC'S UNJUST ENRICHMENT CLAIM ALSO FAILS AS A MATTER OF LAW

HHC's alternative claim for unjust enrichment should also be dismissed. This claim is based on boilerplate allegations that HHC rendered services to WellCare's enrollees, and is therefore entitled to the difference between the "reasonable value" of those services and the amounts paid by WellCare. (Compl. ¶¶ 54-58.) This claim is deficient for several reasons.

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 587 (2005) (citations omitted). Thus, to the extent the Court determines that the CMS Contract governs the amount WellCare must pay HHC, then it must dismiss HHC's unjust enrichment claim. *See Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656 (1987) ("The existence of a valid and enforceable written

contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

To state a claim for unjust enrichment under New York law, HHC must allege facts sufficient to establish "1) that [WellCare] benefitted; 2) at [HHC's] expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal citation omitted).  Courts routinely note that "[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393 (1972), *cert. denied* 414 U.S . 829 (1973).

HHC's allegations fail as a matter of law to state a claim for unjust enrichment.  To recover under a *quasi*-contract theory such as unjust enrichment, a plaintiff must allege services were performed for the defendant at his or her behest.  *See In re Motel 6 Secs. Litig.*, Nos. 93 Civ. 2183, 93 Civ. 2866, 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997).  Here, the Complaint unequivocally asserts that HHC "provided services to WellCare's Medicare enrollees," not to WellCare and not at WellCare's behest.  (Compl. ¶ 54.)  Under New York law, such allegations fail as a matter of law.  *See, e.g., Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) (holding plaintiff could state no claim under *quasi* contract theory against insurer where plaintiff rendered services to third party); *Pekler v. Health Ins. Plan of Greater N.Y.*, 67 A.D.3d 758, 760, 888 N.Y.S.2d 196, 198 (2d Dep't 2009) (holding physicians' quasi contract claim against insurer failed as a matter of law where medical services were provided at behest of patients and not insurer); *Kirell v. Vytra Health Plans Long Island, Inc.*, 29 A.D.3d 638, 639, 815 N.Y.S.2d 185, 187 (2d Dep't 2006) (holding non-contract provider has no *quasi*-contract claim under New York law where services were not performed at the behest of defendant insurance plan); *Kagan v. K-Tel Entm't, Inc.*, 172 A.D.2d 375, 376, 568

N.Y.S.2d 756, 757 (1st Dep't 1991) (holding that a plaintiff must demonstrate that services were performed for the defendant, and that it is not enough that the defendant received a benefit from the activities of the plaintiff); *Shortcuts Editorial Servs., Inc. v. Kaleidoscope Sports & Entm't, L.L.C.,* 183 Misc. 2d 334, 335, 706 N.Y.S.2d 572, 573 (1st Dep't 2000) (dismissing unjust enrichment claim where defendant did not request services of plaintiff). This rule is applied regardless of whether the plaintiff can actually recover from the party who received the services.

In addition, HHC cannot establish that equity and good conscience require WellCare to pay HHC any additional amounts for its services. First, HHC never demanded that WellCare pay it the "reasonable value" of its services. "For many years," HHC accepted the amounts paid by WellCare. (Compl. ¶ 36.) These payments were based on HHC's Billed Charges, *i.e.*, the total of charges itemized on HHC's bills. While HHC objected to WellCare's payment of its Billed Charges in May 2008, it did not at that time demand the "reasonable value" of its services. Rather, it demanded the DRG amount. (*Id.* ¶ 38.) The DRG amount has no relationship whatsoever to the "reasonable value" of HHC's services.

HHC has alleged that it routinely accepts its Billed Charges — the amounts paid by WellCare — from uninsured patients and some out-of-network commercial plans. (*Id.* ¶ 35.) Thus, not only did HHC accept its Billed Charges from WellCare for many years, it has and continues to accept this amount from patients and other payors. HHC's acceptance of this rate of payment negates any implication that this rate is not reasonable. Indeed, HHC's claim is based on the inequitable and unsupportable position that the value of its services differs depending on who is paying the bill. HHC's unjust enrichment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, WellCare respectfully requests that the Court dismiss the Complaint in its entirety pursuant to Rule 12(b)(6), and grant WellCare such other and further relief as the Court deems appropriate.

Dated: January 27, 2011
      Albany, New York

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
    Harold N. Iselin (HI 1428)
    Cynthia Neidl (CN 9511)
    54 State Street, 6th Floor
    Albany, New York 12207
    (518) 689-1400

*Attorneys for Defendant WellCare of New York, Inc.*

ALB 1,385,587v3

21