UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
                                                   :
NEW YORK CITY HEALTH AND                           :
HOSPITALS CORPORATION,                             :
                                                   :
                        Plaintiff,                 :
                                                   :
        - against -                                :
                                                   :
WELLCARE OF NEW YORK, INC.,                         :
                                                   :
                        Defendant.                 :
------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/10/11

**OPINION AND ORDER**

**10 Civ. 6748 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

On September 1, 2010, New York City Health and Hospitals

Corporation ("HHC") filed a verified amended complaint in New York State

Supreme Court, New York County, asserting two state law claims against

WellCare of New York, Inc. ("WellCare"): (1) breach of contract; and (2) unjust

enrichment.  HHC asserts its breach of contract claims as a third-party beneficiary

to that contract.  On September 10, 2010, WellCare removed this Medicare

payment-related action to federal court pursuant to sections 1441 and 1446 of title

28 of the United States Code.  HHC subsequently filed a motion to remand, which

was denied.  WellCare now moves to dismiss both claims under Rule 12(b)(6) of

the Federal Rules of Civil Procedure on the grounds that: (1) HHC's claims are

preempted by federal law; (2) HHC's claims represent an impermissible attempt to

enforce a federal law that does not provide for a private right of action; and (3)

both claims fail as a matter of law.  For the reasons set forth below, WellCare's

motion is granted in part, based on the absence of a private right of action to

pursue the breach of contract claim.

## II.   BACKGROUND[1]

### A.   The Parties

HHC is a public benefit corporation organized under the laws of the

State of New York.[2]  HHC was established by the New York City Health and

Hospitals Corporation Act ("NYCHHC Act") to provide the public with medical

services and facilities, including hospitals.[3]  WellCare is a licensed health plan

with its principal place of business in New York City.  WellCare is a participant in

the Medicare Advantage program, licensed under Article 44 of the New York

Public Health Law.

---

[1]      The factual recitation below is taken from the Amended Complaint
("Compl."), unless otherwise indicated.

[2]      *See* Compl. ¶ 4.

[3]      *See* NYCHHC Act §§ 2, 5(1) & (7).

**B.     Medicare Advantage**

Part C of the Medicare Program, known as Medicare Advantage,

allows Medicare beneficiaries to obtain their medical benefits through private

managed health care organizations ("MA Organizations").[4]  The Centers for

Medicare & Medicaid Services ("CMS"), a division of the Department of Health

and Human Services, is the federal agency that administers the Medicare

Advantage program.  Under this program, MA Organizations enter into contracts

with CMS, according to which CMS pays each MA Organization a set amount for

each Medicare beneficiary it enrolls.[5]  In exchange, MA Organizations agree to

provide their Medicare enrollees with, at a minimum, all the benefits the

beneficiary would be entitled to receive under the Original Medicare program.[6]

---

[4]     *See* Compl. ¶ 4.  The Medicare Prescription Drug, Improvement and
Modernization Act of 2003 ("MMA") replaced what was previously known as
"Medicare+Choice" with Medicare Advantage.  *See* Medicare Prescription Drug,
Improvement and Modernization Act of 2003, 42 U.S.C. §§ 1395w-21- 1395w-28.
Medicare+Choice was the revised form of Part C enacted as part of the Balanced
Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251, 275-334 (Aug. 5, 1997).

[5]     *See* Compl. ¶¶ 5-6.

[6]     *See id.* ¶ 7.  Medicare is currently divided into four parts: Part A,
Hospital Insurance (42 U.S.C. §§ 1395c-1395i); Part B, Medical Insurance (42
U.S.C. §§ 1395j-1395w-5); Part C, Medicare Advantage (42 U.S.C. §§ 1395 w-
21-1395w-28); and Part D, prescription drug coverage (42 U.S.C. §§ 1395w-101-
1395w-154).  "Original Medicare" consists of Parts A and B and is the federal
government's fee-for-service health plan.

WellCare entered into such a contract with CMS.[7] Included in the terms of the contract is a section titled "Provider Protections," in which WellCare agrees to "comply with all applicable provider requirements in 42 C.F.R. Part 422 Subpart E, including . . . rules governing payments to providers."[8]

MA Organizations enter into agreements with health care providers ("Contracted Providers") under which those providers serve MA Organizations' enrollees. Providers that do not have a contract with the MA Organizations ("Non-Contracted Providers") may nevertheless provide services to MA Organizations' enrollees in an emergency capacity.[9] Non-Contracted Providers are paid directly by the MA Organization.[10]

### C.   HHC's Bills

HHC is a Non-Contracted Provider with respect to WellCare's

---

[7]   *See* Compl. ¶ 28; CMS Contract, Ex. B to 1/29/11 Declaration of Cynthia Neidl, Wellcare's Counsel.

[8]   CMS Contract at 4.

[9]   *See* Compl. ¶¶ 9-13; 42 U.S.C. § 1395w-22(d)(1)(E) (mandating that MA Organizations must allow enrollees to obtain emergency medical services "without regard to . . . the emergency care provider's contractual relationship with the [MA] organization").

[10]   *See* Compl. ¶¶ 14-15.

4

Medicare enrollees.[11]  As required by the Emergency Medical Treatment and Active Labor Act, HHC hospitals provide emergency services to WellCare's Medicare enrollees who seek emergency services until their conditions have stabilized.[12]  HHC then bills WellCare for the services provided, using a standard billing form ("UB-04").[13]  HHC includes the amount it seeks as payment in Field 55 of the UB-04 form, which is labeled "Est. Amount Due."[14]  The amount listed in Field 55 is the diagnosis related group ("DRG") payment amount, which is the amount that HHC would receive under Original Medicare.[15]

HHC also lists, in lines 42 through 47 of the UB-04 form, the services provided, and the related revenue codes and charges (the "Posted Charges").[16]  The Posted Charges apply to uninsured patients and some out-of-network commercial plans.  Due to the large number of low-income patients that it serves, HHC tries to keep these charges low and the Posted Charges are often

---

[11]   *See id.* ¶ 29.

[12]   *See id.* ¶ 30; 42 U.S.C. § 1395dd.

[13]   *See* Compl. ¶ 31.

[14]   *See id.* ¶ 32.

[15]   *See id.* ¶ 33.

[16]   *See id.* ¶ 34.

lower than the DRG payment amounts.[17]

Thus the bills that HHC submitted to WellCare listed two sums: one representing the Posted Charges, and the other representing the DRG amount.  For an unspecified number of years, WellCare paid HHC the lesser of the two amounts, which was sometimes the DRG amount, but was usually the Posted Charges.[18]  In May 2008, HHC demanded that WellCare pay HHC the DRG amount, not the Posted Charges, and that it pay HHC the difference between the DRG amounts and the Posted Charges for claims WellCare had already approved and paid.[19]  Over the course of the next year, the parties engaged in discussions regarding the payment dispute.[20]

In November 2009, HHC requested that CMS resolve the parties' dispute by issuing a ruling that would apply to all of the claims for which WellCare had not paid the DRG amount.[21]  In response to the request, CMS issued a letter on May 11, 2010 to "provide clarity on the payment policy issues raised"

---

[17]    *See id.* ¶ 35.

[18]    *See id.* ¶ 36.

[19]    *See id.* ¶ 38.

[20]    *See id.* ¶ 39.

[21]    *See id.* ¶ 49.

by the parties and to assist in resolving the disagreement.[22]   In that letter, CMS

addressed the issue of whether "MA [O]rganizations are allowed to pay the lesser

of a [N]on-[C]ontracted [P]rovider's billed charges for hospital services or the

[DRG] payment amount that may or may not appear on the bill."[23]   The letter

concluded that, "MA plans are not allowed to pay the lesser of charges unless that

amount has been agreed to by both parties."[24]   CMS then directed any further

disputes between HHC and WellCare to its Provider Payment Dispute Resolution

Process, a non-binding and voluntary service offered by CMS.[25]

By letter of September 29, 2010, CMS informed HHC that "[f]or

periods prior to [the] February 25, 2010 guidance . . . the issue of whether a claim

for payment constitutes a bill for the Original Medicare amount or a bill for a

'billed' or 'charged' amount included on the submission is a matter that is open to

interpretation, and must be resolved between the parties."[26]   The amount of the

---

[22]     *See* 5/11/10 Letter from CMS to HHC, Ex. A to Declaration of Sabita
Krishnan, HHC's counsel ("Krishnan Decl.").

[23]     *Id.*

[24]     *Id.*

[25]     *See* Compl. ¶ 43.

[26]     9/29/10 Letter from CMS to HHC, Ex. B to Krishnan Decl., at 1.

identified underpayments at issue exceeds $2.8 million, including interest.[27]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[28] First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[29] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[30]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for

---

[27]   *See* Compl. ¶ 45.

[28]   556 U.S. —, —, 129 S.Ct. 1937, 1950 (2009).

[29]   *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[30]   *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

relief."[31]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[32]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[34]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[35]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document

---

[31]      *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[32]      *Twombly*, 550 U.S. at 564.

[33]      *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[34]      *Id.* (quotation marks omitted).

[35]      *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

'integral' to the complaint."[36]

## B.    Enforcing Federal Law as Third-Party Beneficiaries of Government Contracts

"'[R]ecognition of any private right of action for violating a federal statute . . . must ultimately rest on congressional intent to provide a private remedy."[37] In the absence of an express private right of action to enforce a federal law, courts should only infer a right of action when there is explicit evidence of Congressional intent.[38] "[A] federal court should not strain to find in a contract a state-law right of action for violation of federal law under which no private right of action exists."[39] "Although whether the plaintiff has a private right of action under the statute is conceptually distinct from whether the plaintiff may sue as a third-party beneficiary of the contract mandated by the statute, the same

---

[36]    *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[37]    *Astra USA, Inc. v. Santa Clara County, California*, 563 U.S. —, —, 131 S.Ct. 1342, 1347 (Mar. 29, 2011) (quoting *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991)).

[38]    *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

[39]    *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198 (2d Cir. 2005) (citing *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003)).

considerations largely determine both issues."[40]  "[W]hen a government contract

confirms a statutory obligation, 'a third-party private contract action [to enforce

that obligation] would be inconsistent with . . . the legislative scheme . . . to the

same extent as would a cause of action directly under the statute.'"[41]  Regulations

promulgated under a statute,

> if valid and reasonable, authoritatively construe the statute
> itself, and it is therefore meaningless to talk about a
> separate cause of action to enforce the regulations apart
> from the statute.  A Congress that intends the statute to be
> enforced through a private cause of action intends the
> authoritative interpretation of the statute to be so enforced
> as well.[42]

Therefore a suit filed to enforce a regulation will be analyzed in the same manner

as a suit to enforce a statute.

### C.    Preemption

Preemption may be either express or implied.[43]  Express preemption is

found "when Congress has 'unmistakably. . . ordained,' that its enactments alone

---

[40]    *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983).

[41]    *Astra USA, Inc.*, 131 S.Ct. at 1348 (quoting *Grochowski*, 318 F.3d at 86).

[42]    *Alexander*, 532 U.S. at 284 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984)).

[43]    *See Lorillard Tobacco Company v. Reilly*, 533 U.S. 525, 541 (2001).

are to regulate a part of commerce, [and thus] state laws regulating that aspect of commerce must fall."[44]   In the absence of explicit preemptive language, implied preemption may exist.  Implied preemption may take two forms:

> [1] [F]ield pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and [2] conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[45]

"[A] court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption. Thus, preemption will not lie unless it is the clear and manifest purpose of Congress."[46] Therefore, Congressional intent "is the ultimate touchstone" of all preemption analysis.[47]

## 1.   Express Preemption

---

[44]   *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963)).

[45]   *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

[46]   *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (quotation marks omitted). *Accord New York Dept. of Soc. Servs. v. Dublino*, 413 U.S. 405, 413 (1973) (stating that a federal statute does not supersede state law "unless there is a clear manifestation of intention to do so.").

[47]   *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

12

"If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent."[48]  The preemption provision in the Medicare Act which was adopted in 2003 states that:

> [t]he standards established under this part shall supersede any State law or regulation (other than State licensing law or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.[49]

Prior to 2003, the Medicare preemption provision stated that federal standards would supersede state law and regulations with respect to MA plans to the extent that such law or regulation was "inconsistent" with such standards, and it identified certain standards that were specifically superseded.[50]  The legislative

---

[48]    *CSX Transp.*, 507 U.S. at 664.

[49]    42 U.S.C. § 1395w-26(b)(3).

[50]    42 U.S.C. § 1395w-26(b)(3)(A) (2000), *amended by* 42 U.S.C. § 1395w-26(b)(3) (2003).  The state standards specifically superseded were: "(i) Benefit requirements (including cost-sharing requirements).  (ii) Requirements relating to inclusion or treatment of providers.  (iii) Coverage determinations (including related appeals and grievance processes).  (iv) Requirements relating to marketing materials and summaries and schedules of benefits regarding a Medicare+Choice plan."  42 U.S.C. § 1395w-26(b)(3)(B) (2000), *amended by* 42 U.S.C. § 1395w-26(b)(3) (2003).

history clarifies that the 2003 amendment was intended to increase the scope of preemption, noting that, "the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency."[51] "The Secretary [of HHS] adopted the same reading of the Conference Report in promulgating the final rules: 'We believe that the Conference Report was clear that the Congress intended to broaden the scope of preemption in the MMA.'"[52] However, at the same time, CMS explained that regardless of the increased breadth of the preemption provision, preemption "operates only when CMS actually creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted."[53] Courts have since found various state law claims to be preempted, primarily surrounding the marketing and advertising of Medicare Part C and D

---

[51]     H. Conf. Rep. 108-391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926. *See also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148-59 (9th Cir. 2010) (analyzing the intent behind and effect of the revised preemption provision).

[52]     *Uhm*, 620 F.3d at 1150 n. 23 (quoting 70 Fed. Reg. 4588, 4663 (Jan. 28, 2005)).

[53]     Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01, 4320 (Jan. 28, 2005).

plans.[54]

### 2.    Implied Preemption

"Even where a federal law contains an express preemption clause, the court still may be required to consider implied preemption as it considers 'the question of the substance and scope of Congress' displacement of state law.'"[55]  A "clear demonstration of conflict . . . must exist before the mere existence of a federal law may be said to pre-empt state law operating in the same field."[56]

## IV.    DISCUSSION

### A.    Enforcing Federal Law – Breach of Contract Claim

---

[54]     *See Mann v. Reeder*, No. 10 Civ. 133, 2011 WL 665749, at *5 (W.D. Ky. Feb. 15, 2011) (reserving judgment on preemption, but noting that "[i]f it turns out that [Defendant's] representations were consistent with or identical to the CMS approved 'marketing materials,' the fraud claim will likely be dismissed as preempted"); *Clay v. Permanente Med. Group, Inc.*, 540 F. Supp. 2d 1101, 1108-10 (N.D. Cal. 2007) (holding that claim based on California state law regulating adequacy of disclosures in Medicare Advantage plan's marketing materials was expressly preempted); *Do Sung Uhm v. Humana*, No. 06-0815, 2006 WL 1587443, at *2-3 (W.D. Wash. June 2, 2006) (holding that a state law tort action based on alleged false advertising by Medicare Advantage plan operating under Medicare Part C was preempted by § 1395w-26(b)(3)). *See also* 73 Fed. Reg. 28556, 28582 (May 16, 2008) (in a discussion of the use of independent agents for marketing, the CMS stated, "we recognize that, under the preemption provisions in [the MMA], States do not have the authority to regulate the marketing of Medicare Part C and D plans.").

[55]     *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543 (2008)).

[56]     *Jones v. Rath Packing Co.*, 430 U.S. 519, 544 (1977).

HHC claims to have contract rights as a third-party beneficiary to WellCare's contract with CMS. WellCare in turn argues that HHC's breach of contract claim is an impermissible attempt to enforce a federal law that does not provide for a private right of action. HHC concedes that there is no *express* provision in the Medicare laws or regulations that creates a private right of action for Non-Contracted Providers.[57] Inferring an implied right of action in a federal statute has fallen out of favor over the past forty years, and cannot be found absent explicit evidence of Congressional intent.[58] Such evidence is lacking in the statute at issue and the regulations promulgated under its authority. HHC has not attempted to bring a cause of action directly under the statute, nor has it advanced the argument that an implied cause of action exists within the MMA, its statutory

---

[57]   *See* HHC's Memorandum of Law in Opposition Motion to Dismiss at 22 n.5.

[58]   *Compare Alexander*, 532 U.S. at 286-87 ("[P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."), *and Virginia Bankshares*, 501 U.S. at 1102 ("[R]ecognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy."), *with J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964) ("[I]t is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" of a statute).

16

predecessors, or the regulations implementing it.  Instead, HHC seeks to compel

WellCare's compliance with the terms of the MMA through the contract that

WellCare entered into with the CMS.

Courts are hesitant to allow suits by third-party beneficiaries to

enforce statutory requirements incorporated into contracts with the government

where there is no private right of action under the statute, because the third-party

suit "is in essence a suit to enforce the statute itself."[59]  Here, the relevant

contractual provision reads:

> The MA Organization agrees to comply with all applicable
> provider requirements in 42 C.F.R. Part 422 Subpart E,
> including  provider  certification  requirements,  anti-
> discrimination requirements, provider participation and
> consultation requirements, the prohibition on interference
> with provider advice, limits on provider indemnification,
> *rules governing payments to providers*, and limits on
> physician incentive plans. [422.504(a)(6)][60]

The only relevant portion of 42 C.F.R. Part 422 Subpart E that relates to payments

to providers states that:

> Any provider . . . that does not have in effect a contract
> establishing payment amounts for services furnished to a

---

[59]    *Astra USA, Inc.*, 131 S.Ct. at 1348.  *Accord Grochowski*, 318 F.3d 80;
*Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264 (E.D.N.Y. 2010); *Davis v.
United Air Lines, Inc.*, 575 F. Supp. 677 (E.D.N.Y. 1983).

[60]    CMS Contract at 4 (emphasis added).

> beneficiary enrolled in an MA coordinated care plan, an MSA plan, or an MA private fee-for-service plan must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in [O]riginal Medicare.[61]

The Complaint does not allege that WellCare violated any "independent substantive obligation" arising only from WellCare's contract with CMS.[62] Rather, HHC repeatedly acknowledges that "Medicare law and regulations" were the source of the contractual term allegedly breached.[63]  And because the above-quoted regulation is the only relevant law or regulation incorporated into WellCare's contract with CMS, HHC's breach of contract claim boils down to an effort to enforce that regulation – 42 C.F.R. § 422.214(a)(1).

 The Supreme Court recently determined that there was no private right to sue for breach of contract as a third party beneficiary of a government contract when the statute mandating the contract contained no express or implied

---

[61]      42 C.F.R. § 422.214(a)(1).

[62]      *Astra USA, Inc.*, 131 S.Ct. at 1348.

[63]      *See, e.g.*, Compl. ¶ 47 ("CMS requires MA organizations, including WellCare, to pay health care providers according to the terms and conditions required by Medicare law and regulations."); *id.* ¶ 49 ("WellCare promised to pay health care providers according to the terms and conditions required by Medicare law and regulations."); *id.* ¶ 50 ("Medicare law and regulations require that WellCare pay [HHC] the amount that [HHC] could collect for its services had WellCare's enrollees been enrolled in Original Medicare.").

right of action.  In *Astra USA, Inc. v. Santa Clara County, California,* the Court

unanimously reversed the Ninth Circuit's ruling that third parties could sue to

enforce section 340B of the Public Health Services Act.[64]  In that case, municipal

hospitals sued as third parties, alleging that they had been overcharged millions of

dollars by pharmaceutical companies that had a statutory obligation to sell drugs

to the hospitals at a discounted price.  The pharmaceutical companies had

shouldered that obligation by entering into contracts with the Department of

Health and Human Services.  In determining that the hospitals could not sue as

third-party beneficiaries of those contracts, the Court noted that the contracts

simply incorporated the statutory obligations of pharmaceutical companies

participating in the section 340B program.[65]  Because the statutory and contractual

obligations were "one and the same," a suit to enforce the contract would

undermine Congressional intent.[66]

      HHC's claim here is analogous to that of the municipal hospitals in

---

[64]    The section 340B program "imposes ceilings on prices drug
manufacturers may charge for medications sold to specified health care facilities . .
. dominantly, local providers of medical care for the poor."  *Astra USA, Inc.,* 131
S.Ct. at 1346.

[65]    *See id.* at 1348.

[66]    *Id.*

19

*Astra.* HHC seeks to hold WellCare accountable for breaching WellCare's agreement with CMS to abide by federal regulations. HHC asserts no contract claims apart from those based on WellCare's statutory obligations.

The Court's decision in *Astra* endorsed the Second Circuit's reasoning in an earlier case. In *Grochowski v. Phoenix Construction*, the Second Circuit held that a plaintiff may not get around the lack of a private right of action under a federal statute by artfully pleading a third-party breach of contract claim or quasi-contract claim based on a violation of the statute.[67] Because the federal statute at issue in that case did not permit a private right of action, the Second Circuit characterized the plaintiffs' state law claims as an "impermissible 'end run' around" the federal statute.[68] The court held that allowing the suit to proceed would undermine Congress's intent that the federal law in question be enforced by a regulatory agency and not by private citizens.[69] As HHC's breach of contract claim is an action to enforce a federal law that does not provide for a private right of action, *Grochowski*, along with *Astra*, serves as controlling precedent, and requires dismissal of HHC's claim.

---

[67]   *See* 318 F.3d at 85.

[68]   *Id.* at 86.

[69]   *See id.*

HHC argues that its lack of alternative remedies suggests that its suit is appropriate. However, the enforcement regime in *Astra* was very similar to the one at issue here, yet in that case the Court found the breach of contract claim inappropriate.[70] In addition to CMS's enforcement powers, CMS now offers a dispute resolution program, under which a Non-Contracted Provider in a payment dispute with a MA Organization can seek resolution of the dispute with an independent organization that has contracted with CMS. And, while the dispute resolution program is voluntary and non-binding, its existence alone suggests that HHC's breach of contract claim is barred:

> [A regulatory emphasis on] conciliation and informal resolution of complaints suggests strongly that [Congress] did not intend a conflicting private remedy . . . to be available. To conclude otherwise would mean Congress had purposefully established an elaborate administrative procedure whose effectiveness Congress intended to be undermined willy-nilly through the institution of private lawsuits.[71]

---

[70]    *See Astra USA, Inc.*, 131 S.Ct. at 1346. ("If a manufacturer overcharges a covered entity, HRSA may require the manufacturer to reimburse the covered entity; HRSA may also terminate the manufacturer's [contract] . . . . Currently, HRSA handles overcharge complaints through informal procedures."). CMS's regulatory enforcement tools include: not renewing the contract, 42 C.F.R. § 422.506; terminating the contract, 42 C.F.R. § 422.510; and requiring payment, 42 C.F.R. § 422.520, among others.

[71]    *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1481-82 (7th Cir. 1985).

Although the dispute resolution process available to HHC may not qualify as "elaborate," its existence weighs against finding that Non-Contracted Providers can bring suit to enforce MA Organizations' contracts with CMS.[72]

Further evidence that Congress did not intend that Non-Contracted Providers would have the right to enforce CMS contracts with MA Organizations comes from CMS's enhanced regulatory authority over matters involving Non-Contracted Providers as compared to Contracted Providers. In response to a payment dispute between a Contracted Provider and a MA Organization, CMS wrote:

> This type of contract dispute is an issue for the state judiciary to decide. [Medicare Advantage] regulations clearly limit [CMS]'s ability to intervene in payment disputes between [Medicare Advantage] organizations and their contracted [Medicare Advantage] providers. *In fact, the existence of provider contracts that can be enforced by the courts is why the Congress limited [CMS]'s regulatory authority in comparison to those afforded*

---

[72]      HHC's contention that the availability of administrative remedies is a decisive factor in determining third-party beneficiary rights is undercut by *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677 (E.D.N.Y. 1983) (cited in *Grochowski*, 318 F.3d at 86). In that case, the plaintiff asserted a third-party beneficiary contract claim against his former employer based on violation of a statute that lacked a private right of action. The court held that the claim could not proceed. Despite the fact that no remedy whatsoever was left, the court concluded that the "plaintiff must forego relief, warmed only by the pleasant thought that public policy is being vindicated." *Id.* at 680.

*[N]on-[C]ontracted [P]roviders.*[73]

If Congress intended to permit Non-Contracted Providers to bring third-party beneficiary lawsuits, there would have been no need to enhance CMS regulatory authority over the relationships between MA Organizations and Non-Contracted Providers.

In the absence of any evidence, either in the contract itself, the background statutes, legislative history, or implementing regulations, that Congress intended to confer third-party beneficiary rights to Non-Contracted Providers, I find that HHC cannot proceed on its breach of contract claim. The breach of contract claim is therefore dismissed.

### B.   Preemption

WellCare asserts that all three varieties of preemption – express, field and conflict – bar HHC's state law claims. Because only the unjust enrichment claim remains in the case, the preemption analysis will focus only on that claim.

### 1.   Express Preemption

In *Sprietsma v. Mercury Marine*, the Supreme Court found that a preemption clause almost identical to the preemption clause in the MMA did not

---

[73]    *Christus Health Gulf Coast v. Aetna, Inc.*, 237 S.W.3d 338, 340-41 (Tx. 2007) (quoting Letter from Acting Director of the CMS Medicare Managed Care Group to Plaintiffs (Mar. 30, 2001)) (emphasis added).

express an intent to preempt common law claims, only positive enactments – state statutes and regulations.[74] The Ninth Circuit is the only circuit court that has addressed whether the MMA's preemption clause was designed to apply to common law claims. In that case – *Uhm v. Humana* – the court found that Congress intended the MMA to preempt "at least some common law claims."[75] In making that determination, the court distinguished *Sprietsma* by noting the absence of a savings clause in the MMA, and pointed to the expansive phrase "any State law or regulation" in the MMA's preemption provision.[76]

The *Uhm* plaintiffs' common law fraud and fraud in the inducement claims were found preempted because they would have required the court to determine whether the defendant's marketing materials were misleading. If the court found that the materials "constituted misrepresentations resulting in fraud . . . it would directly undermine CMS's prior determination that those materials were not misleading and in turn undermine CMS's ability to create its own standards for what constitutes 'misleading' information about Medicare Part D."[77]

---

[74]   537 U.S. 51, 63 (2002).

[75]   *Uhm*, 620 F.3d at 1153.

[76]   *See id.* at 1153-54.

[77]   *Id.* at 1157.

24

The Ninth Circuit limited its holding, emphasizing that it "does not mean that all common law fraud and fraud in the inducement claims would be preempted under the Act. The preemption inquiry turns on the specific allegations forming the basis of those claims, not their labels."[78] That inquiry focuses on whether the resolution of a common law claim would interfere with federal standards governing MA plans. "For purposes of the preemption provision, a standard is a statutory provision or a regulation promulgated under the MMA and published in the Code of Federal Regulations."[79]

CMS has established standards for payments to Non-Contracted Providers.[80] However, until very recently, CMS had not set standards governing an MA Organization's responsibility to pay the Original Medicare amount when the bill contained a lower charge.[81] Though CMS has now provided clarification,

---

[78]    *Id.* at 1157 n. 35.

[79]    *Medical Card System v. Equipo Pro Convalecencia*, 587 F.Supp.2d 384, 387 (D.P.R. 2008).

[80]    *See* 42 C.F.R. § 422.214 ("special rules for services furnished by [N]on[-][C]ontract [P]roviders"); § 422.100 (general requirements);

[81]    CMS added a new paragraph to 42 C.F.R. § 422.214 on April 15, 2011 (effective June 6, 2011), designed to reflect the policy set forth in its February 25, 2010 guidance in the regulations governing payment to non-contract providers. The new paragraph reads: "A [N]on[-][C]ontract . . . [P]rovider of services that furnishes services to MA enrollees and submits the same information that it would submit for payment under Original Medicare is deemed to be seeking

judicial resolution of claims predating the recent CMS pronouncements would not upset the statutory regime.  Furthermore, a court would not have to overrule a previous CMS determination in order to find in favor of HHC on its unjust enrichment claim.  In fact, CMS has refused to make a determination on the dispute.  Because the specific allegations underlying HHC's unjust enrichment claim would not interfere with federal standards governing MA plans, the claim is not expressly preempted.

### 2.    Field Preemption

Field preemption occurs "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law."[82]  While the battery of federal laws addressing healthcare is robust and growing, Congress has not demonstrated an intent to exclusively dominate the field.  Indeed, there is evidence to the contrary – the MMA itself expressly leaves room for state regulation of MA organizations in the areas of

---

to be paid the amount it would be paid under Original Medicare unless the provider expressly notifies the MA organization in writing that it is billing an amount less than such amount."  42 C.F.R. § 422.214(c).  Under this new standard, HHC would be entitled to reimbursement at the Original Medicare/DRG amount.

[82]     *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010).

licensure and solvency.[83]

"The presumption against preemption applies in any field in which there is a history of state law regulation, even if there is also a history of federal regulation."[84] The presumption against preemption applies here because "[t]he regulation of public health and the cost of medical care are virtual paradigms of matters traditionally within the police powers of the state."[85] In light of the presumption, field preemption does not apply to HHC's common law unjust enrichment claim.

### 3.   Conflict Preemption

---

[83]   *See* 42 U.S.C. § 1395w-26(b)(3) (2003) ("[t]he standards established under this part shall supersede any State law or regulation (*other than State licensing law or State laws relating to plan solvency*) with respect to MA plans which are offered by MA organizations under this part.") (emphasis added); *see also In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 177 (D. Ma. 2003) ("That Congress has expressly invoked preemption over some aspects of Medicare, while ignoring others, is powerful evidence [against field preemption].").

[84]   *Blue Cross & Blue Shield v. AstraZeneca Pharms. LP*, 582 F.3d 156, 178 (1st Cir. 2009) (citing *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1195 n.3 (2009) ("The presumption . . . accounts for the historic presence of state law but does not rely on the absence of federal regulation.").

[85]   *Medical Soc. of N.Y. v. Cuomo*, 976 F.2d 812, 816 (2d Cir. 1992) (citing *Hillsborough County v. Automated Medical Lab. Inc.*, 471 U.S. 707, 719 (1985) ("the regulation of health and safety matters is primarily and historically a matter of local concern")).

Conflict preemption applies when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.[86] HHC's complaint alleges that HHC "provided services to WellCare's Medicare enrollees in good faith as required by the law," and "expected to be paid by WellCare for the services it provided to WellCare's Medicare enrollees," but that the "Posted Charges are less than the reasonable value of the services it provides."[87] While a fact-finder could potentially conclude that the "reasonable value" of HHC's services is higher that the Original Medicare amount, HHC clarifies in its opposition brief that it "seeks only the DRG amount . . . even if the reasonable value of its services is a higher amount."[88] Therefore there is no danger that allowing the unjust enrichment claim to proceed would conflict with the CMS regulations that set the Original Medicare amount as the ceiling for the reimbursement of Non-Contracted Providers.

### C.    Unjust Enrichment

Because the breach of contract claim, upon which federal question

---

[86]    *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

[87]    Compl. ¶¶ 54, 55, 57.

[88]    HHC's Memorandum of Law in Opposition to Motion to Dismiss at 19.

jurisdiction was based, has been dismissed this Court no longer has subject matter jurisdiction over the unjust enrichment claim. It is therefore remanded to state court.

## V.     CONCLUSION

For the reasons stated above, WellCare's motion to dismiss is granted as to the breach of contract claim, and the unjust enrichment claim is remanded to state court. The Clerk of the Court is directed to close this motion [Docket No. 18], and this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            May 10, 2011

29

**- Appearances -**

**For Plaintiff:**

Alan H. Kleinman
Sabita L. Krishnan
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007
(212) 788-1012

**For Defendant:**

Cynthia E. Neidl, Esq.
Harold N. Iselin, Esq.
Greenberg Traurig, LLP
54 State Street
Albany, New York 12207
(518) 689-1400